IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|   |   |   |
|---|---|---|
| DAVID C. TRAUB, RICHARD O. CABAEL, WILLIAM R. SOTKA, ERN ANDREW GREGORIO, GLORIA GISELDA N. ARROYO, WINELDA C. YCOY, SIMON U. CABAEL, and CHRISTOPHER R. ASIS, | ) ) ) ) ) ) |   |
| Plaintiffs, | ) ) |   |
| v. | ) ) | Civil Action No. 22-1582-SRF |
| STARDUST389, INC.; AIRLOCK389, INC.; CHRISTOPHER H. COOPER, and PATRICIA ANN BELLASALMA, | ) ) ) ) ) |   |
| Defendants. | ) |   |

Thomas S. Neuberger, Stephen J. Neuberger, THE NEUBERGER FIRM, P.A., Wilmington, DE; Timothy P. Rumberger, LAW OFFICES OF TIMOTHY P. RUMBERGER, Alameda, CA.

    Attorney for Plaintiffs.

Samuel L. Moultrie, Renee Mosley Delcollo, GREENBERG TRAURIG, LLP, Wilmington, DE; Justin K. Victor, GREENBERG TRAURIG, LLP, Atlanta, GA.

    Attorneys for Defendants.

**MEMORANDUM OPINION**

April 3, 2024
Wilmington, Delaware

**FALLON, U.S. MAGISTRATE JUDGE:**

Presently before the court in this civil action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, 291, *et seq.*, is a partial motion to dismiss the Third Amended Complaint ("TAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), which was filed by defendants Stardust389, Inc. ("Stardust"), AirLock389, Inc. ("AirLock"), Christopher H. Cooper ("Cooper"), and Patricia Ann Bellasalma ("Bellasalma;" collectively, "Defendants"). (D.I. 68)[1] For the following reasons, Defendants' partial motion to dismiss is GRANTED-IN-PART.[2]

## I. BACKGROUND

AirLock was formed in January of 2020 to commercialize the AirLock™ Anti-Pathogen Purification Technology, a graphene-based air purification media capable of removing airborne pathogens and contaminants. (D.I. 67 at ¶ 23) The first commercial application of AirLock's technology was the AirLock™ AV100 Reusable Mask, which was intended to protect users from the COVID-19 virus. At the time the TAC was filed, the AirLock™ AV100 Reusable Mask was under review by the U.S. Food and Drug Administration ("FDA") and various other global certification programs as a medical device. (*Id.* at ¶ 24)

AirLock is alleged to be an alter ego of Stardust, which was incorporated in Delaware on March 25, 2020. (*Id.* at ¶¶ 12-13) Cooper is the Chief Executive Officer and Chief Science Officer of both AirLock and Stardust. (*Id.* at ¶ 14) Bellasalma is Executive Vice President and Chief Operating Officer of AirLock, and also serves as General Counsel of both Stardust and AirLock. (*Id.* at ¶ 15)

---

[1] The briefing associated with the motion to dismiss is found at D.I. 69, D.I. 71, and D.I. 72.
[2] On October 18, 2023, the parties consented to the jurisdiction of the Magistrate Judge to conduct all proceedings and the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (D.I. 75)

Between April and August of 2020, Stardust entered into a series of Independent Contractor Agreements (the "Agreements") with each of the eight plaintiffs David C. Traub, Richard O. Cabael, William R. Sotka, Ern Andrew Gregorio, Gloria Giselda N. Arroyo, Winelda C. Ycoy, Simon U. Cabael, and Christopher R. Asis (collectively, "Plaintiffs"). (*Id.* at ¶¶ 4-11) Traub was employed as Vice President for International Business Development; Richard Cabael was employed as Chief Financial Officer and Chief Strategic Officer; Sotka was employed as Vice President of Business Development; Gregorio was employed as Vice President of Information Technologies; Arroyo was employed as Marketing Director; Ycoy was employed as Assistant Controller; Simon Cabael was employed as Manufacturing Compliance Officer; and Asis was employed as Social Media Marketing Assistant. (*Id.*)

While the precise terms of the Agreements varied among Plaintiffs, all of the Agreements were ten-year employment contracts providing for an amount of annual deferred cash compensation as well as a percentage of shares of Stardust common stock. (*Id.*) According to the allegations in the TAC, Defendants failed to pay Plaintiffs their contractual wages and prematurely terminated the Agreements between March and September of 2021. (*Id.*) Each of the Agreements was signed by Cooper on behalf of Stardust. (D.I. 19, Exs. 1-8)

Plaintiffs filed this civil action in the Northern District of California on December 16, 2021, seeking relief for wrongful termination and unpaid wages under the FLSA and state law causes of action. (D.I. 1) After several rounds of motion practice and amended pleadings, the case was transferred to Delaware on December 12, 2022. (D.I. 54; D.I. 55) On January 17, 2023, Plaintiffs filed their third amended complaint ("TAC"). (D.I. 67) Defendants filed the pending motion to dismiss the TAC on March 3, 2023, which seeks dismissal of Counts I and III of the TAC for violations of the FLSA and state law breach of contract claims, respectively.

3

(D.I. 68; D.I. 69) The FLSA claim at Count I of the TAC is brought by only three of the eight Plaintiffs: Traub, Richard Cabael, and Sotka. (D.I. 67 at ¶¶ 62-71) The breach of contract claim at Count III is brought on behalf of all eight Plaintiffs. (*Id.* at ¶¶ 81-90) The partial motion to dismiss is fully briefed and ripe for resolution.

## II.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task

4

requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## III. DISCUSSION

The pending motion to dismiss challenges the sufficiency of Counts I and III of the TAC, which assert claims for FLSA violations and breach of contract. The court has federal question jurisdiction over the FLSA claim under 28 U.S.C. § 1331, which gives federal courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). The court has supplemental jurisdiction over the state law breach of contract claim under 28 U.S.C. § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy[.]"

### A. Count I: Violation of the FLSA

Count I is asserted only by plaintiffs Traub, Richard Cabael, and Sotka. (D.I. 67 at ¶¶ 62-71) The TAC avers that Traub, Richard Cabael, and Sotka received no minimum wages and no overtime wages during their employment.[3] (D.I. 67 at ¶¶ 4 at n.4, 5 at n.7, 6 at n.10) Defendants do not challenge the sufficiency of the pleaded allegations regarding minimum wage and overtime violations under 29 U.S.C. §§ 206 and 207(a), respectively, nor do they challenge

---

[3] Before this case was transferred from the Northern District of California, Defendants moved to dismiss Plaintiffs' cause of action for violations of the FLSA's minimum wage and overtime provisions for failure to state a claim under Rule 12(b)(6). (D.I. 31 at 19-20) The Northern District of California granted the motion to dismiss Plaintiffs' "overtime and minimum wage claims under sections 206 and 207" with leave to amend. (D.I. 41 at 4) Defendants focus exclusively on Plaintiffs' cause of action for overtime gap time wages under the FLSA in the pending motion to dismiss, and they do not challenge the sufficiency of the minimum wage and overtime allegations in the TAC as they did in response to the first amended complaint. (D.I. 69 at 4-6)

5

whether Plaintiffs are eligible for relief under the FLSA pursuant to 29 U.S.C. § 213. (D.I. 69 at 4-6) Instead, Defendants' sole challenge to Plaintiffs' FLSA claim rests on their legal argument that overtime "gap time" claims are not cognizable under the FLSA. (*Id.*; D.I. 72 at 7)

"Gap time is defined as uncompensated hours worked that fall between the minimum wage and the overtime provisions of the FLSA." *Hensley v. First Student Mgmt. LLC*, 2016 WL 1259968, at *2 (D.N.J. Mar. 31, 2016) (internal citations and quotation marks omitted). In other words, gap time "is non-overtime hours worked for which an employee is not compensated." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014). A claim for overtime gap time[4] seeks to recover unpaid straight time for a week in which the employee worked overtime. *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996).

The parties' briefing focuses on the split of authority between the Second and Fourth Circuits, the only two circuits that have directly addressed the viability of overtime gap time claims under the FLSA. (D.I. 69 at 4-6; D.I. 72 at 7) In *Conner v. Cleveland County, North Carolina*, the Fourth Circuit held that overtime gap time claims are cognizable under the FLSA because "an employee must be compensated at the agreed-upon or regular straight-time rate (rather than the statutory minimum wage rate) before any computation for overtime." 22 F.4th 412, 422 (4th Cir. 2022). In support of this holding, the Fourth Circuit relied on the Department of Labor's interpretive guidance at 29 C.F.R. § 778.315, which provides that "extra compensation for the excess hours of overtime work under the [FLSA] cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime

---

[4] "Gap time" claims fall into one of two categories: "pure" gap time claims and "overtime" gap time claims. *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). The parties appear to agree that no pure gap time claims are asserted in this case, and it is well-established that pure gap time claims are not cognizable under the FLSA. (D.I. 71 at 6); *see Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014).

6

hours under his contract . . . has been paid." *Id.* Thus, the *Conner* court concluded that all straight time compensation must be paid at the contractual straight time rate, as opposed to the minimum wage rate, before calculating the amount of overtime. *Id.* at 424-25.

In *Lundy v. Catholic Health System of Long Island Inc.*, the Second Circuit rejected the viability of overtime gap time claims, holding that "[s]o long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." 711 F.3d at 116. The Second Circuit expressly considered the language of § 778.315 but declined to follow the Fourth Circuit's approach because the regulation "provides no statutory support or reasoned explanation for this interpretation." *Id.* at 116-17 (citing 29 C.F.R. § 778.315). The *Lundy* court stressed that "the text of FLSA requires only payment of minimum wages and overtime wages," and "[i]t simply does not consider or afford a recovery for gap-time hours." *Id.* at 116. Instead, such claims for payment of straight time hours are covered by state law remedies, "including a basic contract action." *Id.*

In keeping with authority from other district courts within the Third Circuit, the court finds the Second Circuit's reasoning in *Lundy* is more persuasive. *See Rosario v. First Student Mgmt. LLC*, 2016 WL 4367019, at *5-6 (E.D. Pa. Aug. 16, 2016) (adopting the Second Circuit's approach to overtime gap time claims); *Hensley*, 2016 WL 1259968, at *4 (same). As the *Conner* court acknowledged, the plain language of the FLSA does not provide recourse for pure or overtime gap time pay violations: "While direct minimum wage and overtime violations can clearly be addressed by the FLSA, 29 U.S.C. §§ 206-207, no provision of the FLSA explicitly governs employee claims to recover for unpaid gap time." *Conner*, 22 F.4th at 421. Pure gap time claims are not cognizable because the FLSA provides remedies only for minimum wage or

maximum hour violations, and it does not cover claims for unpaid straight time. *Id.* The same rationale extends to overtime gap time claims, which seek the recovery of straight time pay for weeks when an employee worked overtime. *Lundy*, 711 F.3d at 116. Plaintiffs' reliance on the Fourth Circuit's interpretation of 29 U.S.C. § 778.315 cannot overcome the lack of textual support in the FLSA for overtime gap time claims. *See Murphy v. First Student Mgmt. LLC*, 2017 WL 346977, at *3 (N.D. Ohio Jan. 24, 2017) (quoting *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *13 (W.D. Wis. Apr. 11, 2011) ("[A]lthough the regulations provide interpretation for applying the overtime and minimum wage requirements, they cannot create new causes of action for uncompensated straight-time.")). There is "no lack of a state remedy, including a basic contract action," for unpaid overtime gap time wages. *Lundy*, 711 F.3d at 116.

For the foregoing reasons, Defendants' motion to dismiss Count I of the TAC is GRANTED-IN-PART to the limited extent that the claim seeks the recovery of overtime gap time wages. The motion to dismiss the FLSA claim is DENIED in all other respects.

### B. Count III: Breach of Contract

Count III of the TAC alleges a claim for breach of contract against all Defendants under Delaware common law. (D.I. 67 at ¶¶ 81-89) Defendants do not challenge the sufficiency of the allegations as they pertain to Stardust. However, Defendants seek dismissal of Count III against Airlock, Cooper, and Bellasalma because they were not signatories to the Employment Contracts. (D.I. 69 at 3-4) Plaintiffs respond that the TAC plausibly alleges a cause of action for breach of contract against all four Defendants under an alter ego theory of liability. (D.I. 71 at 12-15)

Although Delaware does not generally recognize breach of contract claims against non-parties to the contract, an exception to this rule exists when the non-signatories are "alter egos"

of a signatory. *See Leeward Petroleum, Ltd. v. Mene Grande Oil Co.*, 415 F. Supp. 158, 162-63 (D. Del. 1976) (denying motion to dismiss where pleaded allegations allowed an inference that a non-signatory parent corporation became a principal on the contract between its subsidiary and the plaintiff). The separate legal existence of a corporation may only be disregarded upon a showing that the corporate form was "used to perpetrate a fraud or similar injustice." *Gadsden v. Home Pres. Co., Inc.*, 2004 WL 485468, at *4 (Del. Ch. Feb. 20, 2004).

To determine whether a person or entity is an alter ego for another, courts consider "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (quoting *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015)). No single factor can justify a decision to disregard the corporate form, and "[a]n ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to an overall element of injustice or unfairness." *Id.* at 707 (internal quotation marks and citations omitted); *see U.S. v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988), *aff'd*, 879 F.2d 860 (3d Cir. 1989).

Accepting the TAC's allegations as true, it is plausible to infer that Stardust and AirLock were undercapitalized and/or insolvent. The TAC avers that Defendants' "inability to honor the wage commitments in *every* Plaintiff employment contract" supports Plaintiffs' assertion that Defendants failed to adequately capitalize Stardust and AirLock. (D.I. 67 at ¶ 16) The TAC alleges that the undercapitalization became apparent when Defendants were unable to obtain regulatory approval for production and distribution of the masks, leading Defendants to transmit

9

pretextual termination letters to Plaintiffs in breach of the Agreements. (*Id.* at ¶ 43) These factual allegations support an inference that AirLock and Stardust "operate[ ] as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them." *Manichaean Cap.*, 251 A.3d at 707.

The TAC also plausibly alleges that Defendants failed to observe corporate formalities. Specifically, the TAC avers that Stardust and AirLock share:

> the same registered address and agent for service of process, joint letterhead, joint "business plan" and "revenues" as identified in Plaintiffs' employment contracts, intermingling of finances (*e.g.*, employment contract wages paid interchangeably by defendants – see fn.3), the same President and Chief Executive Officer (co-defendant CEO Christopher Cooper), the same General Counsel and Chief Operating Officer (co-defendant COO Patricia Bellasalma), shared corporate locations in the Philippines, with the same address, office space, facilities and phones, and having the same attorneys representing them in *this* litigation[.]

(D.I. 67 at ¶ 16) By way of example, the TAC states that Traub received wage payments interchangeably from AirLock, Stardust, and Cooper. (*Id.* at ¶ 4 n.3) Similar allegations have been deemed sufficiently well-pled to overcome a motion to dismiss for failure to state a claim. *See Manichaean Cap.*, 251 A.3d at 708.

Defendants argue that the court dismissed a claim of alter ego liability resting on "nearly identical allegations" in *vMedex, Inc. v. TDS Operating, Inc.*, C.A. No. 18-1662-MN, 2020 WL 4925512, at *10 (D. Del. Aug. 21, 2020). (D.I. 72 at 2-3) But the pleaded allegations in *vMedex* were directed exclusively to an alleged failure to observe corporate formalities, with no averments regarding undercapitalization or insolvency resulting in a substantial injustice. *Id.* Similarly, in *First Bank of Delaware v. LeanSpa LLC*, the alter ego claim was dismissed because the pleading asserted only "boilerplate conclusions" regarding inadequate capitalization and failure to respect corporate formalities without supporting facts. C.A. No. 11-675-RGA, 2012 WL 924877, at *2 (D. Del. Mar. 19, 2012). Here, in contrast, the TAC contains specific factual

allegations supporting the averments that Stardust and AirLock were undercapitalized, insolvent, and failed to observe corporate formalities. (D.I. 67 at ¶¶ 4, 16, 43)

The court next considers whether the TAC plausibly alleges that Defendants' business practices "amounted to a fraud, contravention of contract, or public wrong sufficient to justify this Court ignoring the company's corporate form[.]" *Gadsden*, 2004 WL 485468, at *4. The TAC plausibly alleges that Defendants executed the Agreements promising compensation that they had no means to fund. (D.I. 67 at ¶¶ 16, 43, 66) Then, Defendants executed and transmitted termination letters to each Plaintiff falsely purporting to terminate them for cause. (*Id.* at ¶ 43) At this stage of the case, the court takes as true the TAC's allegations regarding Defendants' contravention of the Agreements in furtherance of their common wage theft scheme. The sufficiency of the pleaded allegations regarding Plaintiffs' alter ego theory of liability extends to Cooper and Bellasalma.[5] *See Bramble Constr. Co., Inc. v. Exit Realty, LLC*, 2009 WL 3069686, at *3 (Del. Super. Ct. Aug. 27, 2009) (holding real estate broker liable for breach of contract, along with corporate entities, under an alter ego theory following a trial on the merits); *Gadsden*, 2004 WL 485468, at *4 (holding individual business owner personally responsible for judgment against the corporate entity under an alter ego theory of liability after a trial on the merits).

It is possible that Plaintiffs will not ultimately prevail in proving an exceptional case warranting corporate veil-piercing. At this stage of the case, however, the court must accept the truth of the allegations in the TAC, and Defendants' challenges to the merits of those allegations

---

[5] Plaintiffs argue that Cooper and Bellasalma are liable for breach of contract under the personal participation doctrine. (D.I. 71 at 13-14) Defendants correctly respond that this doctrine applies only to tort claims. (D.I. 72 at 5); *see August v. Hernandez*, 2020 WL 95658, at *3 (Del. Super. Ct. Jan. 6, 2020) ("Under the personal participation doctrine, a corporate official cannot shield himself behind a corporation when he is an actual participant in the tort.").

11

raise issues of fact. Consequently, Defendants' motion to dismiss Count III of the TAC for breach of contract is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED-IN-PART. (D.I. 68) Specifically, the motion is GRANTED to the limited extent that Count I of the complaint asserts an FLSA violation for the recovery of overtime gap time wages. The motion to dismiss Counts I and III is DENIED in all other respects. An Order consistent with this Memorandum Opinion shall issue.